Lauriat, J.
James Sugrue (“Sugrue”) brought this action pursuant to G.L.c. 30A, §14, seeking judicial review of the Contributory Retirement Appeal Board’s (“CRAB”) denial of his application for accidental disability retirement. Sugrue asserts that CRAB’s decision is based upon an error of law, is unsupported by substantial evidence and is arbitrary and capricious. For the following reasons, CRAB’s decision is AFFIRMED, and the Complaint is DISMISSED.
BACKGROUND
The undisputed facts, as stated in the CRAB administrative record, may be summarized as follows: Sug-rue was employed by the Cambridge Police Department (“the Department") from September 1975 to September 1992. Sugrue was appointed initially as a patrolman, and in 1983, he was promoted to the rank of sergeant. In 1988, Sugrue took the promotional examination for lieutenant, and his final score *142 placed him in fifth place for the position. Sugrue stated that the City Manager had assured him that he would be promoted to lieutenant, but he was never appointed to that position. The record reflects that between 1983 and 1988, tension existed between Sugrue and the Cambridge Chief of Police.
At an undetermined point in his career, Sugrue began to experience emotional problems. On September 27, 1990, Sugrue consulted a psychiatrist, Dr. Daniel Asnes. On October 8, 1990, Dr. Asnes wrote a letter to the Cambridge Police Department stating that Sugrue was suffering from job-related stress sufficient to justify a medical leave. In October 1990, Sugrue was placed on paid medical leave due to emotional distress.
In May 1991, the Department requested that Sugrue undergo a psychiatric examination to justify the continuation of his sick-leave status. The doctor concluded that Sugrue was not suffering from a job-related stress disability. On July 19, 1991, the department ordered Sug-rue to return to work. Sugrue did not return to work, and on July 27, 1991, the City changed his employment status to absent without leave.
Sugrue filed a grievance with the City, which failed, and then filed for arbitration. In August 1992, the arbitrator found that Sugrue was not entitled to recover injured-on-duty pay after July 27, 1991, and the Department again ordered him to return to work. On August 27, 1992, Sugrue returned to work for two shifts, and the following day he registered at the psychiatric ward of Cambridge City Hospital. Dr. Asnes wrote a note indicating that Sugrue was suffering from anxiety and could not return to police duties at that time. On September 5, 1992, the City of Cambridge terminated Sugrue. On September 10, 1992, Sugrue filed an application with the Cambridge Retirement Board for accidental disability retirement.
A regional medical panel composed of Dr. Gerd Teshke, Dr. Malcolm Rosenblatt, and Dr. Lloyd Sederer examined Sugrue. Dr. Teshke determined that Sugrue was incapable of substantially performing his job duties, his disability was likely to be permanent, and his disability was the natural and proximate result of work-related personal injuries. Dr. Sederer also determined that Sugrue was incapable of performing his job duties, his disability was due to a work-related injury, and was likely to be permanent. Dr. Rosenblatt found, however, that Sugrue’s symptoms “do not represent a disabling condition.”
On July 29, 1993, the Cambridge Retirement Board granted Sugrue’s application for disability retirement and forwarded its decision to the Commissioner of the Public Employee Retirement Administration (“PERA”). PERA remanded his application to the Cambridge Retirement Board, finding that the Board’s approval was not supported by substantial evidence and was based upon unlawful procedure. Sugrue appealed PERA’s decision to the Division of Administrative Law Appeals (“DALA”). A DALA magistrate affirmed PERA’s decision denying Sugrue’s application. CRAB adopted the magistrate’s findings of fact and affirmed his decision to deny Sugrue’s application. Sugrue then commenced this action in the Superior Court seeking judicial review of CRAB’S decision.
DISCUSSION
General Laws c. 30A, §14(7)(e) allows a court to review and either affirm, reverse, or remand an administrative agency’s decision if the court determines that the decision is based upon an error of law, is unsupported by substantial evidence, or is otherwise not in accordance with law. G.L.c. 30A, §14(7). Substantial evidence is “such evidence that a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). The party appealing the administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 17 Mass.App.Ct 470, 474 (1989). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Comm’r of Public Welfare, 412 Mass. 416, 420 (1992); G.L.c. 30A, §14(7). The findings and decision of the agency are to be sustained wherever possible and are not to be reversed unless they are wholly lacking in eviden-tiary support or are tainted by errors of law. See Woolfall’s Case, 13 Mass.App.Ct. 1070 (1982).
General Laws c. 32, §7 authorizes payment of accidental disability retirement when an applicant proves permanent and total disability “by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time.” G.L.c. 32, §7( 1); Blanchette v. Contributory Retirement Board, 20 Mass.App.Ct. 479, 482 (1985). Accordingly, Sugrue has the burden of establishing a causal connection between a personal injury sustained while in the performance of his duties and his disability. Campbell v. CRAB, 17 Mass.App.Ct. 1018, 1019 (1984). In order to meet this burden, plaintiff must show either (1) his disability was caused by a single or series of work related events, or (2) that his employment exposed him to an “identifiable condition ... that is not common and necessary to all or a great many occupations” which resulted in disability through gradual deterioration. Blanchette v. CRAB, 20 Mass.App.Ct. 479, 485 (1982).
Sugrue alleges that his disability was the product of a gradual deterioration occurring after a series of incidents, including violent and catastrophic accidents involving friends, departmental discrimination and harassment, and threats from other officers including the Chief of Police. General Laws c. 32, §7(1) states, however, that “no such retirement shall be allowed unless such injury was sustained or such hazard was undergone within two years prior to the filing of such application, or if occurring earlier, unless written notice thereof was filed with the board by such *143 member or in his behalf within ninety days after its occurrence." (Emphasis added.) While Sugrue cites numerous incidents occurring more than two years ago to support his claim of disability, his record does not include any written notices of these incidents. Thus, the court may only consider those incidents occurring within the two years prior to the filing of his application.
CRAB found that those incidents occurring within the past two years were limited to Sugrue’s problems with the police chief, and the City Manager’s failure to promote him to the rank of lieutenant. CRAB noted that Sugrue’s cessation of work coincided with the expiration of the promotional list for lieutenant. CRAB determined, and this court agrees, that Sugrue’s conflict with the police chief was not an "identifiable condition not common and necessary to all or a great many occupations” and the city manager’s failure to promote him was a “bona flde” personnel action which is specifically excluded from the definition of personal injury which results in a psychiatric disability under G.L.c. 152, §1(7A)[1].
Sugrue argues that a majority of the medical panel certified that his disability was permanent and causally connected to a work-related personal injury, and no evidence supported CRAB’s finding that Sugrue failed to prove a causal nexus. “A medical panel’s findings as to the plaintiffs condition is not conclusive of the ultimate fact of causal connection but stands only as some evidence on the issue.” Blanchette, supra at 483. The appeal board makes the final determination as to causation based on the facts found and all the underlying evidence, including both medical and nonmedical facts. Id. A review of the medical documents reveals conflicting evidence that could either support or contradict a finding of causation. Two physicians from the medical panel certified that Sug-rue was physically incapacitated and substantially incapable of performing his job, that his disability was permanent, and that his incapacity might be the natural and proximate result of a work related physical injury, while one physician indicated just the opposite, stating that Sugrue’s “symptoms do not represent a disabling condition.”
Based on the medical and nonmedical evidence that CRAB may properly consider and the reasonable inferences therefrom, the court concludes that CRAB’s decision was supported by substantial evidence, was not based upon errors of law, and was not arbitrary or capricious.
ORDER
For the forgoing reasons, the Contributory Retirement Appeal Board denying plaintiff, James Sugrue’s application for accidental disability retirement is AFFIRMED and the Complaint is DISMISSED.

General Laws c. 152, §1(7A) states, “No mental or emotional disability arising principally out of a bona flde, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter. ” The City Manager’s failure to promote Sugrue does not rise to the level of intentional infliction of emotional harm.