Toomey, J.
Pursuant to G.L.c. 30A, §14(7), plaintiff Thomas Ford, Sr. ("Ford”) seeks judicial review of a decision of the Contributory Retirement Appeal Board (“CRAB”) denying his application for accidental disability retirement benefits. Ford alleges that the administrative decision was based upon errors of law, was unsupported by substantial evidence, was arbitrary, capricious and an abuse of discretion, and was otherwise not in accordance with law. For the reasons that follow, this court AFFIRMS CRAB’s decision.[1]
BACKGROUND
Ford began working as a Mental Health Assistant II at Worcester State Hospital in 1969. On July 30, 1979, while working in that capacity, he was assaulted by a patient and suffered injuries to his right shoulder, neck and back. Ford did not return to wo¿k after the incident.
In December of 1992, Ford filed an application for accidental disability retirement, contending that he had incurred psychological problems as a result of the 1979 injuries he sustained at work. Ford was examined by a number of physicians in connection with his application. Drs. Leonard Friedman, Malcolm Sills and Robert J. Mulvey all diagnosed Ford as suffering from major depression and post traumatic stress disorder. All three of the doctors specifically opined that Ford’s psychiatric disability was causally related to his July 30, 1979 injuiy at work.
Ford was further examined by a regional medical panel of psychiatrists in connection with his application for accidental disability retirement. The panel consisted of Drs. Gerd Teschke, Malcolm Rosenblatt and Lloyd Sederer. Both Drs. Teschke and Sederer have offices at 115 Mill Street in Belmont. Ford was examined by both doctors at that address.
All three members of the panel opined that Ford was totally and permanently disabled from his job. However, the panel specifically concluded that Ford’s disability was not causally related to his injury at work. Specifically, with respect to causation, Dr. Teschke opined that:
it is my considered opinion that the injury that Mr. Ford sustained is not causally related to his. disability. It appears that Mr. Ford’s emotional problems are independent of his injury and cannot be attributed to any incidents that happened at work. Mr. Ford has some very minor symptoms related to the trauma, but these symptoms do not contribute significantly to his disability. It appears to me that Mr. Ford’s disability would have developed even without the injury at his work.
Dr. Rosenblatt stated that:
*578 I do not believe there is a causal relationship between injuries sustained on the job and his disability. The injuries sustained were not extraordinary and were consistent with risk undertaken in the job of a mental health worker.
Lastly, Dr. Sederer observed that:
[t]hough a number of events occurred on July 27, 1979, I cannot attribute these events as causal to Mr. Ford’s disability.
Ford was also examined by Drs. Charles Swearingen and Kenneth Applebaum. Dr. Swearingen opined that Ford was not permanently and totally disabled. Rather, Dr. Swearingen determined that Ford’s injuries “have supplied a way out of a work situation in which he was very unhappy.” Dr. Applebaum similarly concluded that Ford did not have a psychiatric disorder related to his work injury and that Ford’s "self-report of disabling depression [was] not credible.”
On January 3, 1994, the State Board of Retirement denied Ford’s claim. Ford appealed that denial to the Division of Administrative Law Appeals. A hearing on the merits was held on February 8, 1995 before Magistrate Joan Freiman Fink. On March 10, 1995, Magistrate Fink issued her decision affirming the State Board’s denial of Ford’s claim. In her decision rejecting Ford’s claim, Magistrate Fink, after reviewing the testimony and medical reports, concluded that Ford failed to meet his burden of proof in demonstrating the causal relationship between his alleged psychiatric disability and his work injuries. Magistrate Fink gave considerable weight to the regional medical panel’s findings that no causal relationship existed. She also noted the conclusions of Drs. Applebaum and Swearingen.
With respect to evidence submitted in support of Ford’s claim, Magistrate Fink concluded that:
[w]hile there is no dispute that [Ford] suffered physical injuries to his shoulder, neck and back as a result of being assaulted by a patient in July of 1979, [Ford] failed to present any evidence to demonstrate that these injuries had a long standing psychiatric impact such as to render him unable to perform his duties some thirteen years later.
She further stated that:
[t]he only evidence in the record to substantiate the claim is the report of [Ford’s] physician, Dr. Leonard Friedman, who merely states that [Ford’s] post traumatic stress reaction and major depressive disorder are causally related to his 1979 industrial accident. However, Dr. Friedman fails to actually explain the connection between the physical injuries at work and the severe multiple psychiatric conditions affecting [Ford].
Ford appealed Magistrate Fink’s decision to CRAB. Adopting the findings of the Magistrate, CRAB affirmed the denial of benefits. Ford now appeals CRAB’s decision to this court.
DISCUSSION
A reviewing court may set aside an administrative decision if it finds that the substantial rights of a party may have been prejudiced because the decision is defective under G.L.c. 30, §14(7). The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989).
A court’s review of an agency decision is confined to the administrative record. G.L.c. 30A, §14(5). The reviewing court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n, 401 Mass. 713, 721 (1988). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982). Unless the administrative decision is unsupported by substantial evidence, it will be allowed to stand. Dohoney v. Director of Div. of Employment Security, 377 Mass. 333 (1979). The findings and decision of the agency are to be sustained wherever possible and are not to be reversed unless they are wholly lacking in evidentiary support or are tainted by errors of law. See Woof all’s Case, 13 Mass.App.Ct. 1070 (1982). That the reviewing court may disagree, on the merits, with the agency’s findings is not grounds for reversal.
A. The Questions of Error of Law 1. The Challenge to Members of the Regional Medical Panel as “Associated Physicians’’
A person who is seeking accidental disability retirement benefits must be examined by a regional medical panel. See G.L.c. 32, §§6(3)(a) & 7. A regional medical panel consists of three physicians who shall not be “associated physicians.” See G.L.c. 32, §6(3)(a). An “associated physician” is a physician who “has a direct and substantial financial interest unrelated to his service under [chapter 32] which can be reasonably effected [sic] by another physician serving on the same medical panel in such a manner and to such an extent as to make it unlikely that the physician would be able to exercise independent judgment in providing such services ...” Id.
Ford argues that Drs. Teschke and Sederer possess a financial interest, unrelated to their service, which could reasonably be affected by their serving on the same panel. That argument proceeds from Ford’s view that, because the doctors share the same office address, they must have interdependent financial circumstances. Ford’s conclusion is, however, the product of suspect logic.
*579 Other than their sharing the same office address, there is no evidence in the record indicating that there is a business relationship between the doctors. Without more, this court cannot make a determination, beyond naked speculation, that Drs. Teschke and Sederer are “associated physicians” as that term is defined by the statute. Thus, the court accepts that the regional medical panel, convened to hear Ford’s case, was properly constituted.

2. The Challenge to the Regional Medical Panel’s Opinion Regarding Causation

Ford argues that CRAB’s decision is based upon an error of law because the regional medical panel’s opinion that his injury is not causally related to his disability constitutes an impermissible unqualified negative opinion entitling him to relief. Ford relies on Noone v. Contributory Retirement Appeal Board, 34 Mass.App.Ct. 756 (1993), for that proposition.
Pursuant to G.L.c. 32, §6(3)(a), a person seeking accidental disability retirement benefits must be examined by a regional medical panel. If he or she is to prevail on the application, the panel must certify, in writing, to the retirement board at the conclusion of the examination that the person seeking benefits “is mentally or physically incapacitated for further duty and that such incapacity is likely to be permanent...” G.L.c. 32, §6(3)(a). The panel must also state “whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone ...” Id. The causation question is that which now requires our attention.
The Appeals Court has had recent occasion to assess a panel’s role in satisfactorily addressing the third issue — causal connection — assigned to it by G.L.c. 32, §6(3)(a). See Noone v. Contributory Retirement Appeal Bd., 34 Mass.App.Ct. 756 (1993). In response to Noone’s application for accidental disability retirement benefits, the regional medical panel examined plaintiff, his hospital records and the report of his physician. Id. at 757-58. After examination, the panel certified that plaintiff was totally and permanently incapacitated to perform his duties by reason of “coronary heart disease, history of degenerative disc disease, and chronic anxiety state.” Id. at 758. With respect to the causal connection question posed by G.L.c. 32, §6(3)(a), the panel answered “no; predisposed to coronary heart disease by multiple risk factors; myocardial infarction was not work-related.” Id. The panel’s certificate was submitted to the State Board of Retirement which denied plaintiffs application. Id. Plaintiff then appealed to CRAB. Id.
CRAB, as required by G.L.c. 32, §16(4), assigned the appeal to the Division of Administrative Law Appeals for a hearingbefore a magistrate. Id. at 759. “The magistrate concluded that Noone had been ‘deprived of a proper medical panel evaluation in accordance with G.L.c. 32, §6(3),’ and recommended [to CRAB] that the application be remanded to a new medical panel.” Id. at 760. CRAB, however, after adopting the findings of fact of the Magistrate and stating that an affirmative certificate of the panel is a “condition precedent" to an award of benefits, affirmed the Board’s decision denying plaintiffs application for benefits. Id. at 760-61. CRAB’s decision was subsequently affirmed in the Superior Court. Id. at 761.
On appeal, the Appeals Court found that the panel’s certificate was in error in that it “did not satisfactorily answer the third question assigned to it by G.L.c. 32, §6(3)(a): whether, in the opinion of the panel, the total and permanent disability of Noone ‘is such as might be the natural and proximate result’ of a work-related injury.” Id. at 761 (emphasis in original). Citing Kelley v. Contributory Retirement Appeal Bd., 341 Mass. 611, 614-16 (1961), the Appeals Court opined that:
[t]he panel has no statutory authority to express an unqualified negative opinion as to causation, and such an opinion, if expressed, is a nullity. This is because the local board is entitled to know whether, in the opinion of the panel, there is a medical possibility that the causal relation exists; absent such information, the local board lacks medical information that, with nonmedical facts presented to the board, provides the basis for the decision of the local board on the question of causation. As noted above, the statute gives to the local board, not to the panel, the determination whether, on the relevant evidence, the causal relationship exists. As Kelly, supra at 616, points out, where “the certificate states only the conclusion that there is no causal connection, the local board does not know whether the opinion of the physicians on the possibility of causal connection is such that the board may proceed with the case.”
Noone, 34 Mass.App.Ct. at 762.
At bar, CRAB asserts that Ford’s case does not fall under the Noone/Kelley doctrine. CRAB contends that, in the cited cases, the courts held that, where the medical panel renders only a negative opinion on causation in fact and fails to address the possibility of causation, the retirement board lacks sufficient information to complete its evaluation. CRAB maintains that, in this instance, “the panel did address the possibility of causation, such that the retirement board was fully informed about the relevant medical facts.” CRAB directs this court’s attention to the reports submitted by Drs. Teschke, Rosenblatt and Sederer of the regional medical panel.
Although the panel’s opinions regarding the causal connection were negative and do not mimic the text of c. 32, §6(3)(a) — to wit, Dr. Teschke: “it is my considered opinion that the injury that Mr. Ford sustained is not causally related to his disability"; Dr. Rosenblatt.: “I do not believe there is a causal relationship between injuries sustained on the job and his disability”; Dr. Sederer: “I cannot attribute these events as causal to *580 Mr. Ford’s disability” — the form of their respective expressions is not fatal to the efficacy of their opinions.
In Noone, the only information in front of the Board regarding causation was the conclusory negative opinions by the medical panel.[2] Noone, 34 Mass.App.Ct. at 761. Thus, the Noone Board was unable, as required by the statute, to determine whether a causal relationship existed. See id. at 762. In the matter sub judice, however, each panel member submitted a separate report to the Board concerning his examination of Ford. Under Ford’s interpretation of Noone, this court would be compelled to ignore the substance of the several reports and limit itself solely to the individual member’s bottom-line conclusion that no causal relationship exists. This court is, however, disinclined to employ such a narrow interpretation of Noone, preferring the view that Noone was more broadly focused upon the panel’s substantive obstruction of the Board’s ability to carry out its statutory duty to determine the existence of a causal connection. Noone ought not to be read as directing that only a recitation by the panel members in “boiler plate” will satisfy the statutory mandate with respect to the causation inquiry. On the contrary, Noone will be satisfied if the panel’s response, in whatever form, allows the Board to perform its determinative function.
The lack of information that condemned the Noone submissions to CRAB does not infect the submissions at bar. After careful review of the administrative record, including the regional panel’s reports, this court finds that, unlike the Noone Board, the instant Board was provided with enough information to allow it to make a determination on causation. That determination will not now be disturbed.
3. The Challenge to the Standard Employed by the Regional Medical Panel Regarding a Causal Relationship
Ford asserts that the medical panel did not employ the correct standard of review. He faults the panel for its alleged failure properly to address the issue of aggravation in its determination of causal relationship.
Ford’s assertion is unavailing as there is no support in the statute or in Malden Retirement Board v. CRAB, 1 Mass.App.Ct. 420 (1973), cited by Ford, for the proposition that a medical panel is required to opine as to whether an applicant’s injury might have aggravated a pre-existing condition to the point of disablement. The Malden plaintiff did suffer from a pre-existing condition. Id. at 421. At bar, however, there is no evidence in the record that Ford suffered from a psychological condition predating the 1979 incident. Thus, the panel was not required to opine as to an aggravation of a pre-existing condition.
Ford also asserts that the medical panel applied an improper “extraordinary” standard of review regarding causation. In support of this proposition, Ford refers to Dr. Rosenblatt’s statement that “that the injuries sustained by [Ford] were not extraordinary and were consistent with risk undertaken in the job of a mental health worker.”
The “extraordinary” argument is also unavailing as there is no evidence that the Board relied solely on the quoted statement in determining the issue of causation. As noted in this court’s distinguishing of Noone supra, the Retirement Board was provided with enough information to allow it to make a determination on causation without regard to the isolated use, by one panel member, of the challenged adjective.
B. The Question of Substantial Evidence
“[The] substantial evidence test is commonly understood to require that agency findings must rest upon such evidence as a reasonable mind might accept as adequate to support a conclusion; review under the standard entails scrutiny of the whole record to determine whether substantial evidence exists.” Boston Edison Co. v. Boston Redevelopment Auth., 374 Mass. 37, 54 (1977). Substantial evidence must be evaluated in the light of the existence, if any, of contradicting evidence which fairly detracts from the weight of the evidence upon which the agency relied. Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966).
Ford contends that the Magistrate’s fact finding is flawed because, except for Dr. Friedman’s report, she did not consider other evidence substantiating Ford’s claim. Ford asserts that the reports of Drs. Friedman, Mulvey, and Sills constitute substantial evidence in support of his diagnosis of major depression and post traumatic stress disorder, as well as in support of an affirmative finding regarding causation. He faults the Magistrate for not crediting those reports with surpassing probative value.
Although Ford’s assertions as to what evidence impressed the Magistrate may well be true, this court’s review focuses only on whether there is substantial evidence to support her decision. See Hickey v. Commissioner of Pub. Welfare, 38 Mass.App.Ct. 259, 262 (1995). Accordingly, this court will not make credibility evaluations or engage in an assessment of the weight to be accorded to the evidence offered to the Magistrate. See id.
Upon review of the administrative record, this court concludes that there exists substantial evidence reasonably to support the Magistrate’s conclusions. The Magistrate made numerous findings of fact in this case. Included in these findings were reports of five separate physicians who had examined Ford. Based on the physicians’ observations, the Magistrate concluded that there was no causal connection between Ford’s psychological injury and the July 30, 1979 incident at work. Even assuming, arguendo, that Ford presented evidence to the contrary, the court concludes that the Magistrate’s decision, and thus CRAB’S affirmance of it, is such that a reasonable mind could accept the decision as adequate to support *581 its conclusion. This record presents no occasion for disturbing CRAB’s determination.[3]
ORDER
For the foregoing reasons, CRAB’s decision, denying Ford’s application for accidental disability retirement benefits, is AFFIRMED.

G.L.c. 30A complaint in this matter was filed well prior to the effective date of Superior Court Standing Order 1 -96(4), providing for review to be had in the context of a motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). The parties do not agree as to whether or not the instant complaint should proceed by way of a Rule 12(c) motion, but, in the interests of expedition, they do concur that this court should conduct the c. 30A review as if presented by a Rule 12(c) motion. The court will accommodate the parties.

The panel did submit an accompanying letter to the State Board recapitulating its work and findings. 34 Mass.App.Ct. at 761. However, there is no indication in the case as to the contents of that letter. See id.

The court will not address Ford’s argument that CRAB’s decision is arbitrary, capricious, an abuse of discretion and not in accordance with law as Ford does not offer any contentions not already addressed in this memorandum.